*C. F. Beery,* for plaintiff.

*Allen, Waters & Andress,* for railroad company.

---

## EVIDENCE AS TO LOST DEED.

[Circuit Court of Cuyahoga County.]

MATILDA SLIPMAN v. CHARLES TELSCHOW ET AL.

Decided, February 23, 1903.

*Lost Instruments—Evidence Necessary to Establish Execution of.*

Under the rule of the Supreme Court as to the evidence necessary to establish a deed alleged to have been lost, it is not sufficient to show that an order was left with a certain abstract company for the drawing of such a deed, or that such a person saw a deed supposed to cover the property in the suit, but who did not observe as to whether it was properly witnessed and executed.

MARVIN, J.; HALE, J., and WINCH, J., concur.

This case comes into this court by appeal from the judgment of the court of common pleas.

The petition sets out that the plaintiff is the owner of a certain piece of real estate in this city, and describes the same, with the averment that the defendants claim some interest therein, and the prayer is that her title to said land may be quieted.

To this petition the defendant, Charles Telschow, answers, denying that the plaintiff is the owner of the whole of said real estate, but avers that he is the owner of an undivided one-half thereof.

The defendant, Wilhelmina Telschow, answers that she is the wife of the defendant, Charles Telschow, and as such has an interest in said estate to the extent of her inchoate right to dower in an undivided one-half interest, which she says is owned by the said Charles.

Whatever rights the plaintiff has in this property came to her by descent from her former husband, Fred Slipman, who died intestate and without issue in July, 1898. In 1892 the property in question was purchased jointly by the said Fred Slipman and the defendant, Charles Telschow, and a deed of the same was executed and delivered to them for the property.

There is no dispute here that the plaintiff is the only heir of her deceased husband, and as such is the owner of an undivided one-half of these premises. The whole dispute is as to the remaining one-half. The claim on the part of the plaintiff is that in 1894, on June 7, a warranty deed of this undivided one-half, which theretofore was the property of the defendant, Charles Telschow, was executed by the said Charles and his wife, Wilhelmina, and delivered to the said Fred Slipman. This deed was not recorded and is not produced in court. Its absence is explained by the plaintiff by saying that immediately after its delivery to her husband he brought it to their home and exhibited it to her; that she complained that her name nowhere appeared in the deed; that her husband became angry and tore the deed, if not entirely into two parts, very nearly so, and then left the room; that she with court plaster fastened the two parts together, went to the room of her mother, which was in the same house, and there exhibited it to her mother, Mrs. Blaha, her sister, Emma Koss, and her brother, John Blaha; that they made some examination of it, but such examination was very hasty, as she heard her husband come into the hallway adjoining the room in which she was exhibiting the deed, and she folded the deed, put it into her clothing and thereafter placed it in a drawer in the room where she and her husband lived. She says that two or three years thereafter her husband took the deed from this drawer and said that he placed it in the safe of the defendant, Charles Telschow, and that she has never seen it since. At the time when she says this deed was delivered to

her husband the relations between herself and her husband were strained, and some two years thereafter she brought a suit for divorce against him and went to live with the defendants, the defendant, Wilhelmina Telschow, being his mother, and it is at or about the time of this separation that she says the deed was taken from their home. After a separation of about five months she and her husband went to living together, and so continued up to the time of his death. Both of the defendants emphatically and unqualifiedly deny that any deed from them to Fred Slipman was ever executed by them. They deny that they ever signed any such deed.

On the part of the plaintiff one Harry Van Heining was called as a witness. He testified that in June, 1894, he was in the employ of Cozad, Belz & Bates Abstract Company of the city of Cleveland; that he was at the time a notary public; that a part of the business of said company was the drawing and acknowledgment of deeds; that by a custom of the company, when a deed was to be drawn, if the deed to the parties about to make the new deed was brought into the office of this company a minute or memorandum was made on such deed, indicating the parties to the new deed and the consideration to be expressed in said new deed, and that a number was given to the transaction, which number was minuted on the old deed; that then in a minute book kept by the company an entry was made with a corresponding number, which entry indicated what was to be done with the deed on which this number was written, and then a mark was made upon such memorandum indicating when the transaction, so far as their office was concerned, was completed. The plaintiff then offered in evidence the deed made to Telschow and Slipman in 1892, and this being exhibited to the witness, he stated that a number, to-wit, 45,115, which appears in pencil on the filing side of said deed, was made by him; that this indicated that some memoranda in reference to this deed would be found in the books of the company under a corresponding number. He further testified that a memorandum found on the opposite side of this deed when folded, reading, "Charles and Wilhelmina Telschow to Fred Slipman, $580," was made by him. He then produced a mem-

orandum book, or a book of the abstract company, entitled on the back, "Orders," and exhibited to the court under the number 45,115 a memorandum which reads: "45,115. Ordered by Chas. T., draw D. Charles and Wilhelmina Telschow to Fred Slipman, for $580 for an undivided one-half interest. To be done Friday, 11 A. M. Delivered 6—8—94." He says that he has no recollection whatever of making the memorandum on the deed nor of making the memorandum in the book. He says that certain marks drawn with a blue pencil across the memorandum in the book indicate the completion of the transaction.

The defendants objected to the introduction of the memorandum on the deed and also the memorandum in the book, and the same was received by the court over such objection, the court reserving, however, the question of whether it should be treated as evidence in the case. The conclusion to which the court has arrived makes it immaterial whether this evidence be considered or not, and hence the question is not here decided. All that is indicated by these memoranda may be true to the extent of showing that this old deed was taken to the abstract office by somebody; that a deed of the undivided one-half from Charles and Wilhelmina Telschow to Fred Slipman was ordered and was made out and paid for. It does not necessarily follow that such deed was ever signed or even ordered by Charles or Wilhelmina Telschow or either of them, and if it was so signed by either of them, it does not follow that the same was ever properly executed. The evidence as to the execution is that the plaintiff says she saw the names of the defendants on the deed shown her by her husband at the proper place for them to sign if they were making such deed. She says there were some names on the left-hand side of the deed nearly opposite these names of the defendants, at the place where witnesses would sign if the deeds were properly executed, and she says there was some kind of a seal on the lower left-hand corner of the deed shown her. She says, too, that this deed shown to her was a warranty deed, and that it described the undivided one-half of the property described in the petition. She does not know whether there was the name of any

notary signed to the acknowledgment or not, nor does she know whether the names of the defendants were written by them or somebody else, nor does she know whose names appeared at the proper place for witness to sign. Her mother, Mrs. Blaha, remembers less of the deed than does the plaintiff. John Blaha, her brother, remembers practically what she does about its appearance. Her sister, Emma Koss, was somewhat familiar with the execution of deeds, being employed in a business office where deeds are frequently made out. She is not certain about the description, but says that the names of the grantors appeared at the proper place for grantors to sign. There were names written at the place where witnesses should sign, and the certificate of the acknowledgment was filled out and it seemed to be all right. She has no recollection of who the witnesses were, nor does she remember that the names of any officer or person was written at the place where the officer taking the acknowledgment should write his name.

There is evidence tending to show that since the death of Fred Slipman the rents upon all this property have been paid to the plaintiff. But she is the administratrix of the estate of her deceased husband; these parties have been in litigation about this property almost ever since Fred Slipman's death, so that the inference is not very strong that this was a recognition on the part of the defendants of her ownership of the property.

Evidence was offered on the part of the defendants tending to show that during the lifetime of Fred Slipman semi-annual settlements were made between him and the defendant, Charles Telschow, in reference to this property, but none of this testimony is very important as bearing upon the issue here. Certainly the case of the plaintiff must be determined upon the question of whether the writing which her husband exhibited to her in June, 1894, was a deed duly executed, attested and acknowledged by Charles and Wilhelmina Telschow to Fred Slipman for this undivided one-half of the property. If all that the plaintiff says is true, though she makes a strong probability that such deed was executed, we do not think that she makes a case under the law announced by our own Supreme

Court in the case of *Gillmore* v. *Fitzgerald,* 26 Ohio St., 171. The syllabus reads:

"Where parol evidence is relied on to prove a deed alleged to have been lost, such evidence must clearly and satisfactorily show the existence and execution of the supposed deed, and so much of its contents as will enable the court to determine the character of the instrument."

The evidence here does not come up to the requirement laid down in this rule. She and other members of her family may have seen what appeared to be a deed, with the names of these defendants upon it at the place where, if they were executing the same, they would have written their names, and yet they may not have written their names there. If they wrote their names, we don't know that their signing was witnessed by anybody, nor do we know that there was any certificate of acknowledgment. There are facts in the case which can not be explained except upon the theory that there was testimony produced upon the trial which was not true. We do not undertake to say who gave the false testimony, but only that if all the testimony introduced on the part of the plaintiff was true, the execution of this deed is not evidenced "clearly and satisfactorily," as is required under the decision of the Supreme Court referred to.

The result is that the petition of the plaintiff is dismissed at her costs.

*P. J. Bradley,* for plaintiff.

*W. T. Clark,* for defendant.